## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WARREN SINCENO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-6895** |
| **DARRYL VANNOY, WARDEN** | **SECTION: "B"(3)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Warren Sinceno, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On April 27, 2011, he was convicted of second degree murder and possession of a firearm by a felon under Louisiana law.[1] On May 12, 2011, he was sentenced to life imprisonment on the murder conviction and fifteen years on the firearm conviction. It was ordered that those sentences be served consecutively and without benefit of parole, probation, or suspension of sentence.[2] Petitioner appealed the murder conviction, and the Louisiana Fifth

---

[1] State Rec., Vol. 1 of 12, minute entry dated April 27, 2011; State Rec., Vol. 3 of 12, jury verdict form.
[2] State Rec., Vol. 2 of 12, transcript of May 12, 2011; State Rec., Vol. 1 of 12, minute entry dated May 12, 2011.

Circuit Court of Appeal affirmed that conviction on July 31, 2012,[3] and the Louisiana Supreme Court denied his related writ application on January 25, 2013.[4]

On or about February 5, 2014, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on July 21, 2014.[6]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on September 15, 2014,[7] and by the Louisiana Supreme Court on March 4, 2016.[8]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[9]  The state filed a response conceding that the application was timely but arguing that petitioner's claims were either procedurally barred or lacked merit.[10]  Petitioner filed a reply to the state's response.[11]

## <u>Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

---

[3] <u>State v. Sinceno</u>, 99 So.3d 712 (La. App. 5th Cir. 2012); State Rec., Vol. 2 of 12.  Petitioner did not appeal the firearm conviction.  <u>Id.</u> at 715 n.1.
[4] <u>State ex rel. Sinceno v. State</u>, 105 So.3d 713 (La. 2013); State Rec., Vol. 3 of 12.
[5] State Rec., Vol. 4 of 12.
[6] State Rec., Vol. 5 of 12, Order dated July 21, 2014.
[7] <u>Sinceno v. Cain</u>, No. 14-KH-651 (La. App. 5th Cir. Sept. 15, 2014); State Rec., Vol. 5 of 12.
[8] <u>State ex rel. Sinceno v. State</u>, 186 So.3d 91 (La. 2016); State Rec., Vol. 5 of 12.
[9] Rec. Doc. 1.
[10] Rec. Doc. 13.
[11] Rec. Doc. 21.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

4

If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this

case as follows:

The testimony adduced at trial showed that on April 7, 2009, at about 7:00 p.m., paramedics responded to a call for assistance in reference to a shooting that occurred in the 2500 block of Illinois Avenue, in Kenner, Louisiana.  When the paramedics arrived, they found the victim, Corey Lewis, lying face down in a prone position, in a parking area, near a fence and a pickup truck.  He had suffered a single gunshot wound to the back of the neck and was pronounced dead on the scene.

According to the testimony, defendant was assisting his mother in moving into an apartment located at 2533 Illinois Avenue.  During the course of the day, the victim and defendant, who knew each other and apparently did not like each other, argued back and forth.  At some point later in the day, defendant was observed holding a gun behind his back and then pointing it just before gunfire

erupted.  There was no testimony that the victim was seen with a gun at the time of the shooting, nor was a gun recovered from or near the victim.

Sergeant Brian McGregor of the Kenner Police Department responded as the lead detective on the case and arrived on the scene shortly after being called about the incident.  After learning that the victim was deceased, the scene was secured.  Sergeant McGregor supervised the collection of evidence.  The victim's bicycle, which was situated approximately 45 feet from the victim's body, and one nine millimeter bullet casing, which was next to the fence near the victim's body, were recovered from the scene that night.  The following day, an additional nine millimeter casing was recovered from the bed of a pick-up truck which was parked near the location of the victim's body.

On the night of the incident, Willie Hale, the victim's father, identified James Joseph as a potential witness.[FN 2] Joseph, who was at the scene when the police arrived, was later transported to the police station where he gave a recorded statement naming defendant as being involved in the shooting.  He also identified defendant in a photographic lineup.  Joseph further led the police to 2340 Idaho Street in Kenner where he had hidden a nine millimeter handgun behind a dumpster. Joseph admitted to firing this gun at the scene.[FN 3]  Sergeant Joel O'Lear of the Jefferson Parish Sheriff's Office Crime Laboratory testified that the shell casings recovered from the scene were fired by the nine millimeter firearm that was recovered near the dumpster.[FN 4]

> [FN 2]  Joseph was called to testify at trial.  He could not remember anything about the incident except trying to "wake up" the victim after the shooting.

> [FN 3]  On cross-examination, Sergeant McGregor admitted that gunshot residue tests were not performed on Joseph; he believed, however, that one was performed on the victim.

> [FN 4]  It is noted that a nine millimeter firearm recovered from defendant's mother's vehicle at the time of his arrest was also tested; Sergeant O'Lear found that this gun had not fired the casings found at the scene.

Following Joseph's identification, Sergeant McGregor obtained an arrest warrant for defendant.  Defendant was apprehended in West Feliciana Parish on April 13, 2009.  When he was apprehended, defendant acted surprised when told that he was wanted for second degree murder.

After being advised of and waiving his rights, defendant gave a recorded statement to the police.  In his statement, which was introduced into evidence, defendant explained that a rivalry existed between him and the victim stemming from issues between his brother and the victim.  Defendant stated that on the day of the shooting, he was being harassed and threatened by the victim, who was riding up and down the street on a bike.  Defendant stated that the victim and his friend "Mike," later identified as James Joseph, who were both armed and shot at him.

Defendant stated that he fired back in self-defense, pushing his mother out of the way. Initially, defendant recounted that "Mike" shot three times and made no mention of the victim shooting a firearm. Defendant later stated that "Mike" shot once and the victim shot twice. He also stated that the victim was walking toward him at the time of the shooting. He was unable to explain how the victim sustained a gunshot wound to the back of his neck. He admitted that the victim and "Mike" were across the street, some distance away from him when he fired the gun. Defendant indicated that he ran away after the shooting, threw his .38 caliber firearm into a canal,[FN 5] and had his mother pack his clothes and drive him to St. Francisville that same night.

> [FN 5] The police searched the canal where defendant indicated that he had thrown the gun; however, they were unsuccessful in locating the gun.

Terry Pennington Sinceno, defendant's mother, testified that she initially told the police that she did not see anything. However, she later admitted that she had observed defendant holding a gun behind his back, then she saw him point it just before gunfire erupted. She repeatedly testified that she never saw defendant shoot the gun. She also stated that she was not close to defendant when the shooting occurred and that she did not remember being pushed out of the way. She admitted that she never saw the victim with a gun on the day of the shooting.

Ms. Sinceno also admitted to picking her son up and driving him to St. Francisville after the shooting. She testified that her son initially denied shooting the victim. She explained that she asked him to talk to the police, but he refused, stating that he did not want to go to jail for life. Defendant also instructed Ms. Sinceno not to say anything to the police.

Cherie Thomas testified that she was helping Ms. Sinceno move on the day of the shooting. When Ms. Thomas went outside to her vehicle, she heard defendant "fussing." She initially thought he was on the telephone, then later realized that he was speaking to someone outside; however, she never saw the other person. She heard defendant say "You're lucky these kids are out here." As Ms. Thomas went back into the apartment, she heard approximately four or five gunshots. She dialed 911 and went outside, where she observed the victim lying on the ground. At that time, she did not see defendant and she never saw him again that day.

Horace Davis testified that he was also helping Ms. Sinceno move on the day of the shooting. He observed defendant and a person consistent with the victim's description talking, but he did not hear any argument, nor see any weapons. When he was walking to his truck to leave, he heard gunshots; however, he did not see who was shooting because he drove away quickly.

Dr. Susan Garcia, an expert in forensic pathology, performed an autopsy on the victim. She testified that the victim died from a single distant range gunshot wound to the back of the neck, which exited through his mouth. Abrasions on the

victim's face were consistent with his falling face forward on a hard object, like concrete.[12]

## Petitioner's Claims

## Confrontation Clause/Impeachment

Petitioner's first claim is that his rights were violated when the state was allowed to call James Joseph to testify and then impeach him with his prior statement to the police, despite the fact that the state knew Joseph would testify that he had no memory of making the statement or of the underlying crime. The state argues that this claim is procedurally barred. The state is correct.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). Where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

Here, there is no question that the state courts denied this claim on procedural grounds. In the last reasoned state court opinion addressing this claim, the state district court held that the claim was procedurally defaulted, stating:

> The court finds this claim procedurally barred from review, as the claim was not raised at trial or on appeal. The defendant had knowledge of the claim, objected

---

[12] State v. Sinceno, 99 So.3d 712, 715-17 (La. App. 5th Cir. 2012); State Rec., Vol. 2 of 12.

at trial, and failed to raise it on appeal. Under LSA-C.Cr.P. art. 930.4, if the application alleges a claim which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief. Additionally, if the application alleges a claim that was raised at trial, but was inexcusably not pursued on appeal, the court may deny relief. LSA-C.Cr.P. art. 930.4(C). As the State points out in its response, the petitioner's claim is barred because it could have been, but was not, raised on appeal. Under La.C.Cr.P. art. 930.4, such claims should be denied.

Furthermore, the court finds under State *ex rel.* Rice v. State, 749 So.2d 650 (La. 1999), petitioner's use of the Uniform Application satisfies the requirement of LSA-C.Cr.P. art. 930.4(F). The court finds these claims procedurally barred from review in post-conviction relief.[13]

Without additional reasons assigned, his related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal[14] and the Louisiana Supreme Court.[15]

It is well-established that La. Code Crim. P. art. 930.4(C) is an independent and adequate state procedural rule sufficient to procedurally bar a claim from federal habeas review. See, e.g., Ayo v. Cain, Civ. Action No. 13-4580, 2015 WL 8475523, at *6 (E.D. La. Oct. 26, 2015), adopted, 2015 WL 8334524 (E.D. La. Dec. 9, 2015); Brown v. Cain, Civ. Action No. 11-2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan. 17, 2012); Thomas v. Cain, Civ. Action No. 11-2408, 2011 WL 6046536, at *5 (E.D. La. Nov. 17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec. 5, 2011); Young v. Travis, Civ. Action No. 07-3542, 2011 WL 494811, at *8 (E.D. La. Jan. 13, 2011), adopted, 2011 WL 494802 (E.D. La. Feb. 4, 2011); Jones v. Cain, Civ. Action No. 10-0187, 2010 WL 3312592, at *5-6 (E.D. La. July 29, 2010), adopted, 2010 WL 3312594 (E.D. La. Aug. 19, 2010); Green v. Cooper, Civ. Action No. 06-1657, 2009 WL 87590, at *10 (E.D. La. Jan. 8, 2009).

Where, as here, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner

---

[13] State Rec., Vol. 5 of 12, Order dated July 21, 2014.
[14] Sinceno v. Cain, No. 14-KH-651 (La. App. 5th Cir. Sept. 15, 2014); State Rec., Vol. 5 of 12.
[15] State *ex rel.* Sinceno v. State, 186 So.3d 91 (La. 2016); State Rec., Vol. 5 of 12.

demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

Here, petitioner argues that the cause for his procedural default was his appellate counsel's ineffectiveness in failing to raise this issue on direct appeal. However, as the undersigned explains in detail later in this opinion,[16] petitioner's counsel was not ineffective in this respect. Where, as here, a petitioner's ineffective assistance of counsel claim is meritless, it cannot serve as cause for a procedural default. Sherill v. Hargett, 184 F.3d 1172, 1176 (10th Cir. 1999); Turner v. Compoy, No. 91-55842, 1993 WL 425372, at *3 n.2 (9th Cir. Oct. 19, 1993); Bella v. Cain, Civ. Action No. 12-2323, 2015 WL 1311216, at *16 (E.D. La. Mar. 23, 2015); Arita v. Cain, Civ. Action No. 11636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 Fed. App'x 352 (5th Cir. 2012); Bridges v. United States, No. 04 Civ. 2715, 2005 WL 1798084, at *2 (S.D.N.Y. Aug. 1, 2005); McLaughlin v. Carroll, 270 F. Supp. 2d 490, 516 (D. Del. 2003).

Because the purported ineffectiveness of appellate counsel cannot serve as cause for the default of this claim, and because petitioner has established no other cause for default of the claim, the Court need not consider whether actual prejudice would result from the application of the

---

[16] See pages 16-25, infra.

procedural bar.  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").

In that petitioner has not met the "cause and prejudice" test, this claim is barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice."  In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).  However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be *exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added).  Here, petitioner presents no new evidence of innocence, much less any new evidence of the type or caliber referenced in Schlup.  Moreover, ample evidence of his guilt was introduced at trial.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

Accordingly, for all of these reasons, this claim is procedurally barred from federal review.[17]

---

[17] **However, in any event, as the Court explains later in this opinion in addressing petitioner's related ineffective assistance of appellate counsel claim, there was no violation of petitioner's rights.  Therefore, even if the claim were not procedurally barred, it would still fail because it has no merit.**

## Ineffective Assistance of Counsel

Petitioner next claims that he received ineffective assistance of counsel both on appeal and at trial.  In the state post-conviction proceedings, the state district court denied those claims, holding:

> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel.  Under the well-known standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect.  State v. Legrand, 2002-1462 (La. 12/3/03), 864 So.2d 89.
>
> To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted.  It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.
>
> Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation.  Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La. App. 5th Cir. 4/26/94), 636 So.2d 1069, 1075.
>
> Mindful of controlling federal and state jurisprudence, this court now turns to petitioner's specific claim of ineffective assistance made in petitioner's application and argued in the memorandum in support, as well as the State's response.
>
> Petitioner first claims that appellate counsel was ineffective for failing to raise the confrontation clause issue from claim #1.  In reviewing claims of ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the defendant.["]  Evitts v. Lucey, 469 U.S. 387, 394 (1985).  The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["]  Jones v. Barnes, 463 U.S. 745 (1983).  This is true even where the weaker arguments have merit.  Id. at 751-2.
>
> When the claim of ineffective assistance of appellate counsel is based on failure to raise the issue on appeal, the prejudice prong of the Strickland test requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised.  United States v. Phillips, 210 F.3d 345, 350 (5 Cir. 2000).

The court finds no merit to petitioner's claim of ineffective appellate counsel. As the State surmises in its response, defense counsel had the opportunity to cross-examine the witness. This witness claimed to have no recollection of events surrounding the murder. The witness's claimed memory loss clearly appeared attributable to his unwillingness to cooperate, and not actually loss of memory. As the State points out, the Confrontation Clause does not guarantee successful cross-examination, but instead the opportunity to cross-examine.

....

Petitioner next claims that trial counsel was ineffective for failure to adequately investigate, failed to bring to the court's attention evidence discovered after trial but before sentencing, and failed to raise confrontation issue in [a] Motion for New Trial.

However, petitioner fails to prove how further investigation would have changed the outcome of the verdict. The court finds petitioner's claim speculative and conclusory, as petitioner does not prove that counsel was unaware of the evidence prior to trial. Additionally, the hiring of an investigator goes to the diligence [of] defense counsel. Petitioner fails to prove how this information could have been used to his benefit at trial, or after trial. Furthermore, petitioner does not prove that a Motion for New Trial would have been granted had this information been brought forth. Petitioner fails to prove deficiency in counsel's performance, or prejudice resulting.[18]

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal[19] and the Louisiana Supreme Court.[20]

As the state courts correctly noted, the United States Supreme Court established a two-prong test for evaluating ineffective assistance of counsel claims. Specifically, a petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or

---

[18] State Rec., Vol. 5 of 12, Order dated July 21, 2014.
[19] Sinceno v. Cain, No. 14-KH-651 (La. App. 5th Cir. Sept. 15, 2014); State Rec., Vol. 5 of 12.
[20] State *ex rel.* Sinceno v. State, 186 So.3d 91 (La. 2016); State Rec., Vol. 5 of 12.

actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

To prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see

14

also Smith v. Robbins, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

Because petitioner's ineffective assistance of counsel claims were denied by the state courts on the merits, and because such claims present mixed questions of law and fact, this Court must defer to the state court decision denying petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).

For the following reasons, the Court finds that petitioner's ineffective assistance of counsel claims have no merit.

Petitioner first contends that his counsel was ineffective for failing to assert on appeal a claim that petitioner's rights were violated when the state was allowed to introduce James Joseph's prior statement to police, despite the fact that Joseph testified at trial that he had no memory of the shooting or having given the statement.  However, for the reasons noted below, the undersigned

finds that there was no underlying violation and, therefore, there is no reasonable probability that petitioner would have prevailed if such a claim had been asserted on appeal.

As an initial matter, the undersigned rejects petitioner's underlying contention that the federal Confrontation Clause prohibits the introduction of a witness' out-of-court statement if the witness suffers from – or purports to suffer from – memory loss at the time of trial. In United States v. Owens, 484 U.S. 554 (1988), the United States Supreme Court noted that it had struggled in the past with the interplay of the Confrontation Clause's protection and a testifying witness' purported memory loss. The Supreme Court observed:

> The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." This has long been read as securing an adequate opportunity to cross-examine adverse witnesses. See, e.g., Mattox v. United States, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895); Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). This Court has never held that a Confrontation Clause violation can be founded upon a witness' loss of memory, but in two cases has expressly left that possibility open.
>
> In California v. Green, 399 U.S. 149, 157-164, 90 S.Ct. 1930, 1934-38, 26 L.Ed.2d 489 (1970), we found no constitutional violation in the admission of testimony that had been given at a preliminary hearing, relying on (as one of two independent grounds) the proposition that the opportunity to cross-examine the witness at trial satisfied the Sixth Amendment's requirements. We declined, however, to decide the admissibility of the same witness' out-of-court statement to a police officer concerning events that at trial he was unable to recall. In remanding on this point, we noted that the state court had not considered, and the parties had not briefed, the possibility that the witness' memory loss so affected the petitioner's right to cross-examine as to violate the Confrontation Clause. Id., at 168-169, 90 S.Ct., at 1940-41. Justice Harlan, in a scholarly concurrence, stated that he would have reached the issue of the out-of-court statement, and would have held that a witness' inability to "recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence." Id., at 188, 90 S.Ct., at 1951.
>
> In Delaware v. Fensterer, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (*per curiam*), we determined that there was no Confrontation Clause violation when an expert witness testified as to what opinion he had formed, but could not recollect the basis on which he had formed it. We said:

"The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." Id., at 21-22, 106 S.Ct., at 295.

Our opinion noted that a defendant seeking to discredit a forgetful expert witness is not without ammunition, since the jury may be persuaded that "his opinion is as unreliable as his memory." Id., at 19, 106 S.Ct., at 294. We distinguished, however, the unresolved issue in Green on the basis that that involved the introduction of an out-of-court statement. 474 U.S., at 18, 106 S.Ct., at 294. Justice STEVENS, concurring in the judgment, suggested that the question at hand was in fact quite close to the question left open in Green. 474 U.S., at 23-24, 106 S.Ct., at 296.

Owens, 484 U.S. at 557-59 (footnote omitted). However, the Supreme Court then went on to resolve the issue:

Here that question is squarely presented, and we agree with the answer suggested 18 years ago by Justice Harlan. "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Kentucky v. Stincer, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987), quoting Fensterer, *supra*, 474 U.S., at 20, 106 S.Ct., at 294 (emphasis added); Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); Ohio v. Roberts, 448 U.S. 56, 73, n. 12, 100 S.Ct. 2531, 2543, n. 12, 65 L.Ed.2d 597 (1980). ... It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and *even (what is often a prime objective of cross-examination, see 3A J. Wigmore, Evidence § 995, pp. 931-932 (J. Chadbourn rev. 1970)) the very fact that he has a bad memory*. … The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee. They are, however, realistic weapons ….

Owens, 484 U.S. at 559-60 (emphasis added).

Moreover, in Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004), the Supreme Court later observed: "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause

places no constraints at all on the use of his prior testimonial statements. … The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."

Based on the foregoing, the undersigned finds that the federal Confrontation Clause does not prohibit the introduction of a witness' out-of-court statement simply because the witness suffers from – or feigns – memory loss. Therefore, petitioner's underlying contention that his Confrontation Clause rights were violated in this case is simply inaccurate.[21]

Further, as noted, to prevail on his ineffective assistance of appellate counsel claim, petitioner must show a reasonable probability that he would have prevailed on appeal if the claim at issue had been asserted on direct appeal. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); accord Smith v. Robbins, 528 U.S. 259, 286 (2000). Petitioner clearly cannot make that showing -- on the contrary, based on Owens and Crawford, the state courts have expressly rejected arguments similar to that espoused by petitioner.

For example, the facts of the instant case are strikingly similar to those in State v. Davis, 128 So.3d 1162 (La. App. 5th Cir. 2013), writ denied, 140 So.3d 723 (La. 2014). In Davis, lay witness Eunice Williams testified at trial; however, exactly like Joseph in the instant case, Williams feigned memory loss[22] and testified that she did not remember giving a statement to the police. The Louisiana Fifth Circuit Court of Appeal, the same court which handled petitioner's direct appeal, rejected the contention that the introduction of Williams' prior statement to police violated the defendant's rights, holding:

---

[21] To the extent that petitioner and his counsel attempt to reframe the Confrontation Clause issue as one of prosecutorial misconduct, contending that the prosecutor made no attempt to compel Joseph's cooperation, see Rec. Doc. 21, p. 2, that argument is likewise unavailing. Neither petitioner nor his counsel has cited any authority for the proposition that a prosecutor has a constitutional obligation to make such an attempt, and the undersigned has found no such authority. See Newton v. Phelps, 943 F. Supp. 2d 494, 502-03 (D. Del. 2013) (rejecting a claim that such actions constituted prosecutorial misconduct).

[22] The Court of Appeal noted "there is no indication in the record that Ms. Williams' memory loss was genuine. To the contrary, the record shows there were ample reasons to be suspicious about Ms. Williams' alleged memory loss." Davis, 128 So.3d at 1168 n.6.

The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. The confrontation clause of the Louisiana Constitution specifically and expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." La. Const. Art. I, § 16. See also State v. Robinson, 01-273 (La. 5/17/02); 817 So.2d 1131, 1135. Confrontation not only means the ability to confront the witnesses physically but also to secure for the opponent the opportunity of cross-examination, which is its main and essential purpose. Id. Cross-examination is the principal way to test the believability and truthfulness of the testimony, and it has traditionally been used to impeach or discredit the witness. Id.

In United States v. Owens, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the Supreme Court addressed the issue of whether a Confrontation Clause violation can be based upon a witness' loss of memory. In Owens, a correctional counselor sustained severe memory impairment after being beaten with a metal pipe. When he was first interviewed in the hospital by the FBI, he could not recall his attacker. A few weeks later, he was able to describe the attack and identify his attacker. At trial, the counselor testified he remembered identifying his attacker in the second interview in a photographic lineup; however, on cross-examination, he admitted he could not remember seeing his assailant. He further could not remember if anyone in the hospital had suggested the identity of his attacker to him despite defense counsel's attempt to refresh the counselor's memory with hospital records, which showed he had attributed the assault to someone other than the defendant.

In finding no Confrontation Clause violation, the Supreme Court explained that "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Owens, 484 U.S. at 559, 108 S.Ct. at 842 [emphasis as in original; internal citations omitted]. The Supreme Court stated that there are other realistic means of impugning the witness; however, it admitted that "[t]he weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success," but emphasized that "successful cross-examination is not the constitutional guarantee." Id., 484 U.S. at 560, 108 S.Ct. at 843. The Supreme Court specifically held that the Confrontation Clause is not violated by the admission of a statement of a witness, who is unable because of a memory loss, to testify concerning the basis for the statement. Id., 484 U.S. at 564, 108 S.Ct. at 845.

Many years later, in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Confrontation Clause requires that testimonial statements can only be admitted as evidence at a criminal trial when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant. In footnote nine of its opinion, the Supreme Court stated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. 1354, 1369, 158

L.Ed.2d 177.  It further stated, "[t]he Clause does not bar admission of a statement as long as the declarant is present at trial to defend or explain it."  Id.

Based on Owens and Crawford, a declarant's appearance and subjection to cross-examination at trial are all that is necessary to satisfy the Confrontation Clause, even if the declarant suffers from memory loss.  See United States v. Keeter, 130 F.3d 297, 302 (7th Cir. 1997), cert. denied, 523 U.S. 1034, 118 S.Ct. 1331, 140 L.Ed.2d 492 (1998) (allowed the admission of an affidavit signed by a witness before trial that implicated the defendant even though the witness feigned amnesia at trial and claimed to have no memory of making the statement or of the events described in the statement); State v. Holliday, 745 N.W.2d 556, 568 (Minn. 2008), cert. denied, 555 U.S. 856, 129 S.Ct. 124, 172 L.Ed.2d 95 (2008) (no Confrontation Clause violation when police officer testified as to information given by a witness during an interview where the witness claimed at trial that he could not remember the interview even after being shown a report detailing the interview; witness' regular use of ecstasy possibly affected his ability to remember); State v. Price, 158 Wash.2d 630, 146 P.3d 1183, 1192 (Wash. 2006) (admission of witness' out-of-court statement did not violate the Confrontation Clause when the witness is questioned about her prior statement but answers that she is unable to remember the statement; court noted the witness was competent to testify and testified under oath, defense counsel called attention to her lack of memory in closing, and the jury was able to view the witness' demeanor so they could evaluate for themselves whether the witness was being truthful about her lack of memory); State v. Gorman, 854 A.2d 1164, 1178 (Me. 2004), cert. denied, 544 U.S. 928, 125 S.Ct. 1663, 161 L.Ed.2d 490 (2005) (admission of the witness' grand jury testimony did not violate Confrontation Clause when the witness had selective memory during trial; court found right to confrontation was satisfied when the defendant was given the opportunity to cross-examine the witness before the jury); and State v. Pierre, 277 Conn. 42, 890 A.2d 474, 502 (Conn. 2006), cert. denied, 547 U.S. 1197, 126 S.Ct. 2873, 165 L.Ed.2d 904 (2006) (admission of out-of-court statement did not violate Confrontation Clause where the witness claimed he was unable to remember the earlier statement or the events surrounding the statement).

Thus, based on Owens, we find the admission of Ms. Williams' statement did not violate Defendant's right to confrontation.  Ms. Williams appeared at trial, was sworn in and answered questions posed to her.  Although she claimed she did not remember giving the statement to the police, she admitted the voice on the recorded statement sounded like her.  We find that under these circumstances, Defendant was afforded an adequate opportunity to cross-examine Ms. Williams sufficient to satisfy the requirements of the Confrontation Clause.

Davis, 128 So.3d at 1167-69 (footnote omitted).

In light of the foregoing, there is simply no basis to conclude that petitioner would have prevailed on appeal if only his counsel had asserted the proposed Confrontation Clause claim.

Therefore, petitioner's claim that his appellate counsel was ineffective in this respect necessarily fails.

Petitioner also argues that appellate counsel was ineffective for failing to assert a claim that appellate counsel was deficient for failing to argue that, in addition to the federal Confrontation Clause claim, Joseph's statement was admitted in violation of state evidentiary law. For the following reasons, that contention is likewise meritless.[23]

To the extent that petitioner is contending that Joseph's statement was inadmissible under state law because it was it was hearsay, that contention is incorrect. Louisiana law provides:

A statement is not hearsay if:

(1) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

(a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness' attention to the statement and the

---

[23] Petitioner argues that it should be presumed that the state courts "overlooked" this component of his claim in light of the fact that they failed to expressly address it and, therefore, the AEDPA's deferential standards of review for claims "adjudicated on the merits" should not be applied. However, the United States Supreme Court has explained that the presumption is to the contrary:

> AEDPA sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). In Richter, 562 U.S., at ——, 131 S.Ct., at 785, we held that § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Rather, we explained, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id., at ——, 131 S.Ct., at 784–785.
>
> … Although Richter itself concerned a state-court order that did not address any of the defendant's claims, we see no reason why the Richter presumption should not also apply when a state-court opinion addresses some but not all of a defendant's claims. There would be a reason for drawing a distinction between these two situations if opinions issued by state appellate courts always separately addressed every single claim that is mentioned in a defendant's papers. If there were such a uniform practice, then federal habeas courts could assume that any unaddressed federal claim was simply overlooked.
>
> No such assumption is warranted, however, because it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference. On the contrary, there are several situations in which state courts frequently take a different course.

Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013). Nevertheless, this ineffective assistance claim, like all of petitioner's claims, fails under both the AEDPA's deferential standard of review and a *de novo* standard of review.

witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement.

La. Code Evid. art. 801(d)(1).  Joseph's prior statement falls within that definition.

To the extent that petitioner argues otherwise, contending that impeachment was improper because the statement was not in fact "inconsistent" in that Joseph stated only that he did not "recall" giving the statement (as opposed to expressly denying that he gave it), that, too, is incorrect.  The law in Louisiana has long been otherwise.  For example, in 1939, the Louisiana Supreme Court noted:  "It is well settled that a witness who states that he does not remember whether he made certain statements to a person named may yet be impeached by proof that he did make the statements as charged, which he affected not to recall."  State v. Taylor, 192 La. 653, 655, 188 So. 731 (1939).  That remained the rule after the state's adoption of the Code of Evidence.  As the Louisiana Third Circuit Court of Appeal has explained:

> A witness must fail to distinctly admit having made the statement before evidence of such statement may be used to impeach.  The question then becomes whether a witness' inability to recall a statement constitutes a failure to distinctly admit having made it.
>     In State v. Singleton, 454 So.2d 353 (La.App. 4 Cir. 1984), the court held that the failure of a witness to recall previous statements was a failure to distinctly admit making them, and evidence of the statements should have been allowed for impeachment purposes.  This theory is not new to Louisiana jurisprudence, State v. Taylor, 192 La. 653, 188 So. 731 (1939), and State v. Johnson, 47 La.Ann. 1225, 17 So. 789 (1895), and it remains under the provisions of La.C.E. Art. 613.  The defendant/witness was "given the opportunity to admit the facts" and he "failed distinctly to do so," as required by La.C.E. Art. 613.

State v. Stanfield, 562 So.2d 969, 974 (La. App. 3rd Cir. 1990); accord State v. Dubroc, 755 So.2d 297, 308 (La. App. 3rd Cir. 1999) ("Failure to recall a statement constitutes a failure to distinctly admit having made it.").

Lastly, to the extent that petitioner is arguing that appellate counsel was ineffective for failing to argue that the prosecutor's actions were improper under State v. Cousin, 710 So.2d 1065 (La. 1998), that argument is unavailing for the following reasons.

In Cousin, the Louisiana Supreme Court found that the trial court had erred in admitting the prior statements of one of the state's witnesses. The Supreme Court reasoned that the witness's prior statements had not truly been admitted at trial to *impeach* the witness, but it was instead impermissibly used as *substantive evidence of the defendant's guilt*. However, petitioner cannot avail himself of Cousin's holding in this instance because his defense counsel's objection at trial was simply that the prosecutor was improperly attempting to impeach Joseph with hearsay, **not** that the prosecutor was attempting to impermissibly use the content of the statement as substantive evidence of petitioner's guilt.[24] Therefore, due to the lack of a proper contemporaneous objection on that basis, appellate counsel was foreclosed from arguing on appeal that the statement was inadmissible because the prosecutor was attempting to use it as substantive evidence of guilt.

For example, when confronting this same scenario in State v. Dubroc, 755 So.2d 297, 308 (La. App. 3rd Cir. 1999), the Louisiana Third Circuit Court of Appeal held:

> Defendant interposed an objection, but the objection went to the impeachment procedure and the particular questions and answers being read. As stated above, the objecting party must make known the action he/she desires the trial court to take at the time an action by the trial court is sought. La.Code Crim.P. art. 841. To preserve an error for appeal, Defendant must state the basis for the objection, point out the specific error to the trial court, and the grounds for the objection must be sufficiently brought to the trial court's attention so as to allow it the opportunity to make the proper ruling and prevent or cure any error. State v. Trahan, 93-1116 (La.App. 1 Cir. 5/20/94); 637 So.2d 694. In this case, Defendant did not state the correct basis for the objection nor point out the specific error to the trial court. His objection went to the procedure used by the State, albeit a proper objection, but he did not object to the use of impeachment evidence going to the issue of guilt or

---

[24] State Rec., Vol. 1 of 12, transcript of April 26, 2011, p. 32. Counsel did not raise that concern until the following day, whereupon the trial judge agreed to instruct the jury that a prior inconsistent statement could be used only for impeachment purposes and not as substantive evidence of guilt. See State Rec., Vol. 2 of 12, transcript of April 27, 2011, pp. 4-5, 8-9, and 12-13.

innocence nor did he request an admonition.  Therefore, Defendant waived his right to appeal that issue.

Dubroc, 755 So.2d at 308-09.

The same is true in the instant case.  And, obviously, appellate counsel cannot be considered ineffective "in declining to raise an unreviewable issue."  Givens v. Cockrell, 265 F.3d 306, 310 (5th Cir. 2001); accord Weatherspoon v. Cockrell, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011) ("[A]ppellate counsel was precluded from raising this claim because there had been no contemporaneous objection at trial.  Therefore, appellate counsel was not deficient for failing to raise the issue on appeal, and petitioner suffered no prejudice.  Accordingly, petitioner's instant claim fails because he cannot show a reasonable probability that he would have prevailed on appeal if the issue had been raised." (citations omitted)), adopted, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); Arceneaux v. Cain, Civ. Action No. 06-3964, 2009 WL 917429, at *10 (E.D. La. Mar. 31, 2009) ("Where appellate review of a claim would be barred due to the absence of a contemporaneous objection, appellate counsel is not ineffective for failing to assert the claim.").

Petitioner also claims that his trial counsel was ineffective.  Specifically, in a pretrial interview with a defense investigator, James Joseph purportedly stated that "he has to show up for Sinceno's trial, but that he does not have to testify."[25]  Petitioner argues that his trial counsel was ineffective for not bringing that information to the court's attention at trial and in a motion for new trial.

However, the underlying premise of petitioner's claim – i.e. that the prosecution is prohibited from calling a witness to testify if it knows that the witness will claim memory loss – is untenable.  Neither petitioner in his original application nor his counsel in her reply to the state's

---

[25] Rec. Doc. 1, p. 8.

response in this proceeding cited any authority for that premise, and this Court's independent research has failed to uncover any such authority. Moreover, it must be remembered that this is not a case in which it was known that the witness would invoke a valid *privilege* and the prosecutor nevertheless called the witness in the hope that the jury would draw an adverse inference against the defendant based on the witness' invocation of the privilege. See United States v. Coveney, 995 F.2d 578, 585 (5th Cir. 1993) ("Both the Supreme Court, see Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), and our court, see San Fratello v. United States, 340 F.2d 560 (5th Cir. 1965), have recognized that forced invocation of a testimonial privilege might, in some cases, so prejudice the defendant as to warrant reversal."). Rather, this is a case in which a witness *without* a valid legal right or privilege allowing him to refuse to testify simply indicated prior to trial that he was unwilling to testify. To hold that a prosecutor is foreclosed from calling such a witness would defy logic and experience, because obviously witnesses who initially balk at testifying sometimes relent when actually in the witness stand. See, e.g., United States v. Inadi, 748 F.2d 812, 820 (3d Cir. 1984) ("Every veteran trial judge has experienced the situation where a hostile witness discards his 'stonewalling' tactics when faced with an imminent contempt citation."), rev'd on other grounds, 475 U.S. 387 (1986); Black v. Woods, 651 F.2d 528, 531 (8th Cir. 1981) ("[A]lthough [the witness] had indicated she would refuse to testify, neither the government nor the court could be sure that she would do so until she was directed to testify by the court."); United States v. Mayes, 512 F.2d 637, 649 (6th Cir. 1975) ("Since the government has the obligation to present such relevant testimony as the witness may possess, it must in turn have a reasonable opportunity to test whether that testimony will be forthcoming, and if not, whether it can be compelled.").

Accordingly, even assuming that he knew that Joseph would feign memory loss, the prosecutor did not act improperly in nevertheless calling Joseph as a witness. Therefore, defense counsel did not perform deficiently and petitioner was not prejudiced by counsel's failure to present evidence of the prosecutor's knowledge on this point either at trial or in a post-trial motion.

<u>**RECOMMENDATION**</u>

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Warren Sinceno be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

New Orleans, Louisiana, this fifth day of July, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[26] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

27